<u>NOT FOR PUBLICATION</u>

<u>UNITED STATES DISTRICT COURT</u>
<u>FOR THE DISTRICT OF NEW JERSEY</u>

_____
                               :

SUPER 8 MOTELS, INC.,           :

                               :

          Plaintiff,          :

                               :          Civil Action No. 06-5642 (JAG)

                      v.            :

                               :            **OPINION**

CONQUISTA HOTEL GROUP, LTD;  :
ALANIS HOTELS, L.C.; JOSE ALANIS;  :
JOSE ALANIS, JR.; RUTH ALANIS;  :
SAMUEL VELA,             :

                               :

         Defendant.        :

_____:

<u>GREENAWAY, JR., U.S.D.J.</u>

       This matter comes before this Court on Plaintiff Super 8 Worldwide, Inc.'s ("Plaintiff" or "SWI") motion for entry of default judgment against defendants Conquista Hotel Group, Ltd. ("Conquista") and Alanis Hotels, L.C. ("Alanis Hotels") (collectively, the "Corporate Defendants"), as well as defendants Jose Alanis ("Jose"), Jose Alanis, Jr. ("Jose, Jr."), Ruth Alanis ("Ruth"), and Samuel Vela ("Vela") (collectively, the "Individual Defendants"), pursuant to FED. R. CIV. P. 55(b).  SWI seeks damages for an alleged breach of a license agreement between SWI and Conquista.  SWI also seeks treble damages, pursuant to 15 U.S.C. § 1117 of the Lanham Act, for the alleged unauthorized use of SWI's trademarks..

**I.  <u>FACTS</u>**

       SWI, formerly known as Super 8 Motels, Inc., does not own or operate any hotels, but instead operates a guest lodging facility franchise system composed of various trade names,

service marks and logos (the "Super 8 Marks"), as well as "certain standards and centralized support functions . . . ."  (Affidavit of K. Noel Hedges, Director of Franchise Administration for plaintiff SWI, dated March 21, 2008 ("Director Aff.") ¶¶ 1, 3.)  The hotels operating as part of the franchise system are independently owned and operated.  SWI allows its franchisees, pursuant to individual franchise or license agreements, to operate their hotels using the Super 8 Marks.  (Id. ¶ 4.)

On or about June 9, 2000, SWI and Conquista entered into a franchise agreement (the "Franchise Agreement") for the operation of a fifty-five room guest lodging facility, located at 1000 West Interstate 20, Midland, Texas, Site No. 8369 (the "Facility").  (Id. ¶ 5.)  The Franchise Agreement permitted Conquista to operate as a SWI franchise facility and use the Super 8 Marks for a twenty-year term.  (Id. ¶ 6.)  The Individual Defendants signed a guaranty (the "Guaranty") which stated that, upon a default under the Franchise Agreement, they would "immediately make each payment and perform or cause Conquista to perform, each unpaid or unperformed obligation of [Conquista] under the Franchise Agreement." (Id. ¶¶ 16-17; see also Guaranty, attached as Ex. B to Compl.)

The Franchise Agreement required Conquista to make periodic payments to SWI for royalties, service assessments, taxes, interest, reservation system user fees, annual conference fees, and other fees (collectively, the "Recurring Fees").  (Id. ¶ 7.)  To calculate the amounts of these Recurring Fees, SWI relied on Conquista's monthly disclosures of the preceding month's "gross room revenue earned by Conquista at the Facility . . . ." (Id. ¶ 8.)  The Franchise Agreement also provides that SWI may terminate the Franchise Agreement, after providing notice to Conquista,

2

> for various reasons, including Conquista's (a) failure to pay any
> amount due SWI under the Franchise Agreement, (b) failure to
> remedy any other default of its obligations or warranties under the
> Franchise Agreement within 30 days after receipt of written notice
> from SWI specifying one or more notices of default under the
> Franchise Agreement, and (c) receipt of two or more notices of
> default under the Franchise Agreement in any one year period,
> whether or not the defaults were cured.

(Id. at 10; see also Compl. Ex. A at 11.)

On February 27, 2004, SWI terminated the Franchise Agreement because Conquista failed to pay the Recurring Fees or to file monthly franchise reports for the Facility for the month of January of 2003 and from March of 2003 through February of 2004.  (Id. ¶¶ 19-21.)  This termination "precluded Conquista from any further use of the Super 8 Marks in or around the Facility." (Id. ¶ 22.)  However, after the termination of the Franchise Agreement, Conquista allegedly continued to use Super 8 Marks without authorization.  (Id. ¶ 25.)  Conquista allegedly "continued to misuse the Super 8 Marks until at least July 2005 despite receiving notification from SWI to cease and desist from the misuse of the Super 8 Marks."  (Id. ¶ 27.)

## II. LEGAL STANDARD

FED. R. CIV. P. 55(b)(2) provides:

> In all other cases, the party must apply to the court for a default
> judgment.  A default judgment may be entered against a minor or
> incompetent person only if represented by a general guardian,
> conservator, or other like fiduciary who has appeared.  If the party
> against whom a default judgment is sought has appeared personally
> or by a representative, that party or its representative must be
> served with written notice of the application at least 3 days before
> the hearing.  The court may conduct hearings or make
> referrals--preserving any federal statutory right to a jury
> trial--when, to enter or effectuate judgment, it needs to:
> > (A) conduct an accounting;
> > (B) determine the amount of damages;

3

(C) establish the truth of any allegation by evidence; or
(D) investigate any other matter.

"The Federal Rules of Civil Procedure commit the entry of a default judgment against a party to the sound discretion of the trial court."  F.T.C. v. Packers Brand Meats, Inc., 562 F.2d 9, 10 (8th Cir. 1977).

"Default establishes the defaulting party's liability for the well-pleaded allegations of the complaint."  U.S. v. Gant, 268 F. Supp. 2d 29, 32 (D.D.C. 2003) (citing Brock v. Unique Racquetball & Health Clubs, Inc., 786 F.2d 61, 65 (2d Cir. 1986)).  However, "the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation."  Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974).  "Following the entry of default, a district court can enter a final judgment without requiring further proof of damages only in limited situations."  KPS & Associates, Inc. v. Designs By FMC, Inc., 318 F.3d 1, 19 (1st Cir. 2003).  For example, "no evidentiary inquiry is necessary if the claim is for a 'sum certain'", id., or if the claim is based on "an enforceable liquidated damages clause in a contract." Id. at 20.  However, beyond these limited situations,  "[t]he district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty."  Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999).

This Court "has considerable latitude in determining the amount of damages."  Jones v. Winnepesaukee Realty, 990 F.2d 1, 4 (1st Cir. 1993).  In determining the amount, a district court may conduct a hearing.  FED. R. CIV. P. 55(b)(2).  However, the court is not required to do so "as long as it ensure[s] that there [is] a basis for the damages specified in the default judgment." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109

F.3d 105, 111 (2d Cir. 1997)(quoting Fustok v. ContiCommodity Services, Inc., 873 F.2d 38, 40

(2d Cir.1989)).   "It is familiar practice and an exercise of judicial power for a court upon default,

by taking evidence when necessary or by computation from facts of record, to fix the amount

which the plaintiff is lawfully entitled to recover and to give judgment accordingly."  Pope v.

United States, 323 U.S. 1, 65 (1944).

### III.  JURISDICTION

Before the entry of default judgment against a party that has not filed responsive

pleadings, "the district court has an affirmative duty to look into its jurisdiction both over the

subject matter and the parties."  Williams v. Life Sav. & Loan, 802 F.2d 1200, 1203 (10th Cir.

1986).

This Court has subject matter jurisdiction over the present case, pursuant to 28 U.S.C. §

1332, because Plaintiff, Corporate Defendants, and Individual Defendants are citizens of

different states, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

Specifically, SWI is a corporation organized and existing under the laws of the State of South

Dakota, with its principal place of business in Parsippany, New Jersey.  (Compl. ¶ 1.)  Conquista

is a limited partnership organized and existing under the laws of the State of Texas, with its

principal place of business in Midland, Texas.  (Id. ¶ 2.)  Alanis Hotels is a limited liability

company organized and existing under the laws of the State of Texas, with its principal place of

business in Laredo, Texas.  (Id.)  In addition, the Individual Defendants are all citizens of the

State of Texas, residing in Laredo, Texas.[1]

---

[1]  This Court also has subject matter jurisdiction as a result of SWI's Lanham Act claim,
pursuant to 28 U.S.C. §§ 1331, 1338, and 15 U.S.C. § 1121.  See 28 U.S.C. § 1331 ("The district
courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or

To ascertain whether or not a court has personal jurisdiction, a federal court sitting in diversity must conduct a two-step analysis.  First, the court must look to the forum state's long-arm statute to determine if personal jurisdiction is permitted over the defendant.  Second, the court must determine whether the exercise of jurisdiction violates Due Process of the Fourteenth Amendment.  IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998); Vetrotex Certainteed Corp. v. Consol. Fiber Glass Products Co., 75 F.3d 147, 150 (3d Cir. 1996).

In this forum, the inquiry collapses into a single step because New Jersey's long arm statute permits the exercise of personal jurisdiction to the fullest limits of due process, as defined under the Constitution of the United States.  As such, federal law defines the parameters of this Court's in personam jurisdiction.  IMO Indus., Inc., 155 F.3d at 259.  The Fourteenth Amendment permits a state to exercise jurisdiction over an out-of-state defendant only where "the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (quoting Hanson v. Denckla, 357 U.S. 235 (1958)).  It is the burden of the plaintiff to prove that the defendant has purposefully availed itself of the forum state.  Burke v. Quartey, 969 F. Supp. 921, 924 (D.N.J. 1997).

Personal jurisdiction, however, is a right that can be waived by the parties.  Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 703 (1982).  A forum

---

treaties of the United States."); 28 U.S.C. § 1338(a) ("The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks."); 15 U.S.C. § 1121(a) ("The district and territorial courts of the United States shall have original jurisdiction . . . of all actions arising under this Act, without regard to the amount in controversy or to diversity or lack of diversity of the citizenship of the parties.").

selection clause in a contract is one way to effectuate this waiver.  Nat'l Equip. Rental, Ltd. v. Szukhent, 375 U.S. 311, 315 (1963).

This Court has personal jurisdiction over Conquista by virtue of a forum selection clause in Section 17.4 of the Franchise Agreement, which includes a waiver of objections to personal jurisdiction.   (Compl. Ex. A at 17).  This Court has personal jurisdiction over the Individual Defendants by virtue of the Guaranty, which adopts the same forum selection clause included in the Franchise Agreement.  (Compl. Ex. B.)  Specifically, Section 17.4 of the Franchise Agreement, and the Guaranty by incorporation, states, in relevant part, that Conquista has consented and waived any objection to "the non-exclusive personal jurisdiction of and venue in the New Jersey state courts situated in Morris County, New Jersey and the United States District Court for the District of New Jersey for all cases and controversies under this Agreement or between we [SWI] and you [Conquista]." (Compl. Ex. A at 17.)

"[I]n a federal forum, the enforceability of a forum selection clause is determined by a generally applicable federal law."  Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd., 709 F.2d 190, 201 (3d Cir. 1983), cert. denied, 464 U.S. 938 (1983), overruled on other grounds; Lauro Lines S.R.L. v. Chasser, 490 U.S. 495 (1989).  This Court must look to federal law in determining whether to enforce the forum selection clause in the Agreement.

The Supreme Court of the United States has held that "[forum selection] clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances."  M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972).  This rule reflects the principle that courts should enforce freely negotiated contract terms and give effect to the legitimate expectations of the parties.  Id. at 12.

7

Expanding on this ruling, the Third Circuit has adopted the following three step test:

> [A] forum selection clause is presumptively valid and will be enforced by the forum unless the party objecting to its enforcement establishes (1) that it is the result of fraud or overreaching; (2) that enforcement would violate strong public policy of the forum; or (3) that enforcement would in the particular circumstances of the case result in jurisdiction so seriously inconvenient as to be unreasonable.

Coastal Steel, 709 F.2d at 202 (quoting M/S Bremen, 407 U.S. at 12-13). A court may refuse to enforce a forum selection clause if any of the factors have been demonstrated. Id.

In the instant case, Conquista consented to personal jurisdiction in New Jersey by virtue of the forum selection clause in Section 17.4 of the Franchise Agreement. The Individual Defendants also consented to personal jurisdiction by signing the Guaranty, which incorporated Section 17.4 of the License Agreement by reference. The parties did not present facts that this Court finds indicative of fraud or overreaching, of a strong violation of public policy in this forum, or of an unreasonably inconvenient forum. Because forum selection clauses have been upheld as a valid mechanism by which to waive the right to personal jurisdiction, this Court has personal jurisdiction over Conquista and the Individual Defendants.

This Court cannot, however, find on face of this Complaint that Alanis Hotels is subject to personal jurisdiction in the State of New Jersey. Although it is alleged to be a "general partner" (Director Aff. ¶ 18), Alanis Hotels is neither a signatory to, nor guarantor of, the Franchise Agreement. Therefore, this Court declines to enter default judgment against Alanis Hotels.

## IV.  ANALYSIS

### A.    Default Judgment

On November 27, 2006, SWI filed the Complaint, and Corporate Defendants and

Individual Defendants filed their Answer on April 26, 2007.  On August 21, 2007, attorney Miguel A. Pozo ("Pozo") moved for leave to withdraw as counsel for Corporate Defendants and Individual Defendants, due to their failure to respond or otherwise cooperate with Pozo's firm in preparing a defense to this litigation.  (Docket Entry No. 17.)  On August 30, 2007, Magistrate Judge Madeline Cox Arleo granted the motion for leave to withdraw as counsel, and ordered Corporate Defendants to obtain new counsel.  (Docket Entry No. 19.)  Magistrate Judge Madeline Cox-Arleo stated that, if Corporate Defendants failed to obtain new counsel by October 1, 2007, she would ask the District Judge to strike their answers and enter default against them, since a corporation must obtain an attorney at law to represent it before the adjudicating court.  If the Individual Defendants failed to obtain counsel by October 1, 2007, Magistrate Judge Arleo explained, they were to proceed on a <u>pro se</u> basis and attend all court conferences.

On October 5, 2007, Corporate Defendants and Individual Defendants failed to appear for a status conference.  Magistrate Judge Arleo issued an Order to Show Cause why sanctions should not be imposed against Individual Defendants for failing to appear at the October 5th status conference, which was returnable on October 25, 2007; however Individual Defendants did not appear at the October 25th conference.  Furthermore, no counsel had filed a notice of appearance on behalf of Corporate Defendants or Individual Defendants.

In response, Magistrate Judge Arleo issued a Report and Recommendation ("R&R") on October 30, 2007 requesting this Court to strike the answers of the Corporate Defendants, order default against them, and permit Plaintiff to proceed to judgment by default against them for failure to secure counsel.  On December 10, 2007, this Court ordered that default judgment be entered against the Corporate Defendants, and that SWI "be permitted to proceed to judgment by

9

default as to Conquista and Alanis . . . ."  (Docket Entry No. 23).

With respect to Individual Defendants, Magistrate Judge Arleo issued a second Order To Show Cause why sanctions should not be imposed against Individual Defendants for failing to appear at court-requested conferences.  Again, Individual Defendants failed to appear before Magistrate Judge Arleo on November 20, 2007, the return date for the Order To Show Cause.  As a result of Individual Defendants' dilatory conduct, this Court adopted Magistrate Judge Arleo's R&R, dated December 18, 2007, striking "the answer of [the Individual Defendants], ordering that default be entered against them, and allowing plaintiff to proceed to judgment by default . . . ." (Docket Entries No. 24 and 27).

Neither the Corporate Defendants nor the Individual Defendants have responded to the instant motion, filed on March 21, 2008 and served on them on the same date.  This Court finds that default judgment against Conquista and the Individual Defendants is appropriate, pursuant to FED. R. CIV. P.  55(b)(2), on all counts of the Complaint.

**B.**     **Damages**

Exclusive of attorneys' fees and costs, Plaintiff requests the following damages: $126,824.64 in liquidated damages; $92,871.90 in interest from the liquidated damages; $45,177.17 in unpaid Recurring Fees; $33,754.20 in interest from the Recurring Fees; and $159,801.66 in treble damages, pursuant to the Lanham Act.

Section 12.1 of the License Agreement defines "Liquidated Damages" as "an amount equal to the sum of accrued Royalties and System Assessment Fees during the immediately preceding 36 full calendar months (or the number of months remaining in the unexpired Term (the 'Ending Period') at the date of termination, whichever is less)."  (Compl. Ex. A at 12.)

10

However, "[i]f the Facility has been open for fewer than 36 months, then the amount shall be the average monthly Royalties and System Assessment Fees since the Opening Date multiplied by 36." (Id.)  Plaintiff did not submit any evidence to support its calculation of the liquidated damages amount.  As a result, this Court shall reserve judgment on the amount of liquidated damages, and the amount of interest from liquidated damages, to award Plaintiff.

Section 7 of the License Agreement outlines the various Recurring Fees Conquista is obligated to pay.  (Id. at 8-9.)  These fees include royalties, reservation system fees, and taxes. Plaintiff seeks damages of $45,177.17 in Recurring Fees, exclusive of interest, and separate from the damages sought pursuant to the Lanham Act.  (Hedges Aff. at 29-30.)

The outstanding Recurring Fees are itemized in a statement attached to K. Noel Hedges' Affidavit.  Based on Conquista's failure to submit a monthly report of the Facility's gross room revenues for the month of January 2003 and for the months of March 2003 through February 2004, SWI could not calculate the Recurring Fees using the Facility's actual gross room revenues for those months.  (Hedges Aff. at 30.)  Instead, SWI estimated the Recurring Fees due during those months by using the Facility's gross room revenues submitted by Conquista for the same months during the prior year.  (Id.)

At present, SWI has submitted no evidence supporting its calculation of these estimates. Therefore, this Court cannot verify the actual amount of Recurring Fees owed, or calculate the amount of interest due to Plaintiff.

Section 17.4 of the License Agreement states that the "non-prevailing party will pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this Agreement or collect amounts owed under this Agreement."  (Compl. Ex. A at 17.)

11

However, Plaintiff has not provided sufficient documentation to assure this Court regarding the amount of attorneys' fees and costs. See L. Civ. R. 53.2 (requiring an affidavit setting forth, inter alia:   "(1) the nature of the services rendered, . . . (2) a record of the dates of services rendered[,] (3) a description of the services rendered on each of such dates by each person of that firm . . . (4) the time spent in the rendering of each of such services[,] and (5) the normal billing rate for each of said persons for the type of work performed."). This Court will reserve judgment on this amount based on the paucity of evidence on this point.

   Finally, Section 35 of the Lanham Act states that

> [w]hen a violation of any right of the registrant of a mark registered in the Patent and Trademark Office . . . shall have been established in any civil action arising under this Act, the plaintiff shall be entitled . . . to recover (1) defendant's profits, (2) any damages sustained by plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. . . . In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount.

15 U.S.C. § 1117(a). While this Court may, in its discretion, award damages, pursuant to the Lanham Act, Plaintiff has failed to provide sufficient documentation for this Court to calculate the amount of damages owed for the period of infringement–approximately March 22, 2005 through September 12, 2005. Plaintiff is correct that, without discovery, it is difficult to determine Conquista's gross room revenue, or the amount of Recurring Fees due to Plaintiff, during the infringement period. However, Plaintiff fails to provide this Court with documentation to support its calculation of the average Recurring Fees Defendant paid over the term of the Franchise Agreement. As such, this Court reserves judgment on the amount of

damages due, pursuant to the Lanham Act.

## V.  CONCLUSION

For the reasons stated above, SWI's motion for default judgment shall be granted.


      S/Joseph A. Greenaway, Jr.        
      JOSEPH A. GREENAWAY, JR., U.S.D.J.


Date: October 29, 2008